May it please the Court, my name is Jusciah Neely, and I represent the appellant taxpayer in this matter. I'd like to reserve five minutes for rebuttal, and I will keep track of the clock. I'd like to begin by acknowledging that the IRS performs a very vital function in our society. Taxes are the price that we pay for civilization, to quote Justice Holmes. And it is important that the tax system in the IRS is able to operate efficiently, and that is why Congress has limited the ability of taxpayers to challenge the imposition of taxes and has limited the review by the federal courts of IRS decisions. However, in this case, the position that the IRS is able to effectively allow the IRS to systematically evade all judicial review of its imposition of taxes in cases involving core political speech and the fundamental constitutional rights of organizations. In 2004, Catholic Answers sent out an e-letter, which, as I recall, was a letter to Congress which involved the theological and moral question of whether political candidates who support abortion rights should be denied communion. Based on the complaint of that, there was a two-year investigation of whether this constituted an improper political intervention that would potentially imperil Catholic Answers' tax-exempt status. And ultimately, that resulted in taxes being imposed on Catholic Answers based on that. They then went through the process of paying the tax, waiting the six-month period, filing for a refund, excuse me, waiting the six-month period for the IRS to act on the refund, and then filing a lawsuit for a refund under Section 4955, claiming that these were not political expenditures and that the IRS was not willing to pay them. Applying the political expenditure statute to speech that wasn't an express advocacy violated their constitutional rights. It's a standard argument in campaign and the First Amendment area. The IRS, instead of granting relief under the refund statute, 4955, granted an abatement under a different statute, 4962, which did not involve the IRS conceding that the e-letter and Catholic Answers speech was not taxable political expenditure. In fact, the grant of the abatement under Section 4962 presumes just the opposite. It presumes that the speech was taxable political expenditure, but because it wasn't willful and the IRS in its discretion was not going to impose the tax. That has significant collateral consequences for Catholic Answers going forward. It means that in the future, Catholic Answers, should it choose to engage in similar sorts of speech before, it increases the likelihood that it will be taxed and ultimately have its tax exempt status revoked based on that. It also has effectively, because of that, Catholic Answers has been chilled from engaging in prior speech that it had done involving voter guides and e-letters involving theological issues that might touch on political candidates. Well, it did touch on a political candidate. It touched upon the specific one who was running for president. That's correct. I believe he's still Senator Kerry, but he was then the nominee for president. Well, Mr. Neal, you've set out the facts and what's happened, but the real problem is what relief can the federal court give you? Well, the district court dismissed No, I ask you a question. What relief can a federal court give you? It can declare that the It can give a declaratory judgment? It can give a Are we prohibited from giving a declaratory judgment? Not in the context of a refund suit. Now, just a minute. Yes. You think a federal court can issue a declaratory judgment saying what? That the e-letters, the Catholic Answers e-letters, were not political interventions because they did not involve express advocacy. But aren't we violating a statutory program? No, Your Honor. The Declaratory Judgment Act does not preclude declaratory relief being granted attendant to a refund suit. But now they've already made the refund. Well, they gave an abatement under a different statute. They gave you the money back. That's correct, Your Honor. So you've got the money back. That's correct, Your Honor. And so there's no refund. We can't give you any money. You've got it. No, but you can still give us relief under the refund statute, section 49. Well, why? You have the money. We can't give you any more money. Isn't that right? We cannot give you any refund. Is that right? Is that right? Well, yes, that's correct. We cannot give you a refund. Right. This is not a refund suit. It is a refund suit in that it is brought under section 49. But you've got the refund. It's mooted. No, Your Honor, because collateral consequences. What? There are collateral consequences that remain. There are collateral consequences, but as far as getting a refund, you have it. What are the collateral consequences when you get the money back? Because the IRS has said that Catholic Answers did engage in improper political expenditures, that means that there's three things that remain even beyond the money. One is that Catholic Answers is unable to reimburse Mr. Keating for his expenses because it can only do that if they weren't political expenditures. Is there some prohibition on you doing that? Is there some prohibition on your refunding the money? To Mr. Keating? Keating, yes. Mr. Keating, right. Yeah, I believe that that would incur separate tax consequences for Catholic Answers. Explain how that would happen. If I could, Your Honor, maybe I could address that in my rebuttal. All right, but tell us the other two consequences. Okay, all right. The other consequences are that Catholic Answers, because the IRS has effectively let it off with a warning, if it engages in similar speech in the future, it could have its tax exempt status revoked. And because of that, it is chilled from engaging in protected speech. It's not doing its voter guide anymore. Would you put Catholic Answers in the exact position of every other 501c3 organization? No, Your Honor. The fact that it is previously, that the IRS has previously held that it engaged in improper political interventions. No 501c3 organization is allowed to engage in political intervention. That's the law, right? That's correct. That's correct, Your Honor. However, the IRS operates on all facts and circumstances test. And if the issue goes to whether a violation is willful and flagrant, previous instances in which the Catholic Answers is engaged in the same activity make it more likely that its status would be revoked. I don't quite understand why it makes it more likely. Before they made this determination about the good faith of your organization, they imposed a penalty that amounted to less than what it cost to probably print your brief here. So the next time around, after they imposed a penalty of combined under $100, or if you count the Keating amount under $1,000, the next time they're going to go ahead and impose a, they're going to take away your tax exemption. Is that a realistic fear? Well, I have two answers for you, Your Honor. The first is that I think that the cost to Catholic Answers involved in responding to the IRS investigation for two years and then seeking the refund suit, it's more than just the strict dollar amount that's imposed. And by allowing the IRS to go through this entire process and then move the suit before there's ever a determination year after year, the Supreme Court indicated in Bob Jones that that was, it was very suspect allowing the IRS to require the taxpayer to engage in a series of suits without ever reaching, all on the same issue, without ever reaching. That's not our situation here. That's not our situation. They actually gave you the notice that you were receiving the refund and the abatement before you filed the lawsuit. Well, under, they gave us notice that they were abating the tax. They were giving you, they would give you the refund. I don't know why you keep not wanting to admit a fact that we all know exists. Well, but I think that there is a difference in that. It's a difference of whether the IRS says that we didn't break the law and therefore they're giving us the money back, or we did break the law but they don't think it was willful and flagrant. Well, they've told, regardless of the label, they've told you the reason. It wasn't willful and flagrant. Correct. So we don't have to get involved in these semantics. I understand your point that whether it's a refund or abatement is a term of art, but fundamentally they've said this was the reason we're giving you the money back. Well, that's correct, Your Honor, but that's not the basis of the suit that we brought. And as I indicated before, there are consequences, collateral consequences that incur from the fact that the IRS hasn't conceded that the taxes were improperly imposed but, in fact, maintains that they were properly imposed. And the collateral consequences are in the future. The issue with Mr. You didn't really want them to give you back the money. You were worried about mootness. Well, we wanted them to give us back the money because we didn't do anything wrong. Right. And, yes, that affects consequences in the future, but as the Supreme Court has stated in the Citizens United decision and in other cases, when you're in a First Amendment context and you were dealing with a religious organization and also speech involving political figures, the chill effect on First Amendment rights can't be dismissed. The problem I have with that argument is the doctrine of variance because that's not the basis to which you disputed.  I would humbly submit that that's not correct, Your Honor, for two reasons. First, if you look in the record. Yeah, I did this morning. I understand. Okay, all right. But I would just direct you in the record to pages 70, 71, and also 74, 75, our responses to the IRS request for information. We explicitly say that the e-letters aren't political interventions because that term can only be constitutionally limited to express advocacy. I think you used the word constitutional. You make a constitutional claim, a First Amendment claim. Well, express advocacy is a term of art in First Amendment constitution. Can I ask you a different question? Sure. Why can't you just pursue your e-mails regarding politicians and the church's view on politicians in your 501c4 entity? That's an excellent question, Your Honor. And the Supreme Court in Citizens United said that the fact that an organization can form a separate organization and do its speech through that separate organization doesn't eliminate the First Amendment harm to- Right, but it was talking about the organization that it could create was a 501c4, and then it said that the corporations could just donate the money directly to a 501c4. That's correct, Your Honor, but it's still the case that Catholic answers would be limited and chilled in what it could do itself through its own speech. And Citizens United is quite clear that the fact that you can form a separate organization and do the speech through that doesn't eliminate a First Amendment problem. I see that I've run through- Can I just make one more point to that? Sure. It's not that Catholic answers couldn't do that. It's just that it couldn't do that as a 501c3. Well, that's correct, Your Honor, but our position is that that judgment is dependent on and presupposes that the e-letters were political expenditures, which is our fundamental claim is that they're not political expenditures because they didn't involve express advocacy. All right. Thank you, Counsel. Good morning, Your Honors. Patrick Erda for the United States. Your Honors, there are two questions before this Court, and I think that the bench has already explored them both. First, whether the refund claims are moot. And they are. All effective relief has been granted, therefore rendering them moot. And as you pointed out, Judge Wardlaw, if not for mootness, there's also the substantial variance doctrine, which bars almost all of the refund claims. And then secondly, there's the declaratory relief that's really the heart of this case. But the Declaratory Judgment Act precisely bars the type of future declaratory relief that Catholic Answers seeks. So let's explore the exception to mootness that is at issue here, whether it's capable of repetition yet evading review. Sure. So let's say that Catholic Answers in the next election wants to say don't vote for an ex-candidate because they favor abortion. And they want to do it under the rubric of their 501c3. And so they issued that. Couldn't the same thing happen all over again? They sent out this e-mail. The IRS claims that they owe them taxes. It claims they owe them taxes. And then says, well, well, it wasn't intentional or willful, and so we never get to the question of whether that type of political speech by a religious organization runs afoul of the rules governing 501c3 corporations. You know, I think it's hypothetically possible that the precise same type of concerns expressed by Catholic Answers in the e-mails here could come up again. But remember, this was a two-year investigation into both the voter guides and the e-mails that were featured on the website for a long time. And so the IRS had to do a very fact-specific analysis to determine whether it felt that this did cross the line. So could we gin up some situations where the exact same thing happens? Sure. But I think that it's hypothetical enough, or it's not likely enough that this would happen, that that exception applies. I mean, if you think about the Church of Scientology case. Which exception? The exception for good faith in the state? No, the capable of repetition, evading review exception described in the Church of Scientology case, which kind of established that. Judge Corman was a case in which the exact same issue was assuredly coming up year after year. And so, you know, while this, you know, hypothetically could happen, it doesn't seem to reach that type of regularity that this exception applies. There has to be a reasonable expectation. And it seems as though, I'm not sure if this rises to the level of reasonable expectation, but it seems as though Catholic Answers wants a determination. So if they can, it might be likely to engage in that type of expressive advocacy again. In which case, is there a reasonable expectation that the IRS would decide, well, now it's intentional, now they're trying to create a lawsuit? You know, I'm not sure. And that's why this is a, you know, it's such a fact-specific analysis. What was said, remember in this analysis. Suppose they said, we want to do the same thing again, and we're going to be chilled. We're afraid that penalties are going to be brought against us. Well, again, Judge Corman, I'm sorry if I cut you off. No, no, go ahead. Okay. Again, I don't think that just saying that we want to do political speech in the future gets you within the exception. I think that the exception really requires kind of tracking what's gone before and what's going now. And the problem here is the type of inquiry that the IRS conducts is such a fact-specific. It was a two-year audit to try to discern whether this crossed the line or not. And I think we want the IRS to have a fact-specific analysis, to make sure that things like political speech don't get chilled unnecessarily. But on the other hand, as you pointed out, Judge Wardlaw, this is kind of the restriction that goes hand in glove with a 501c3. That's another reason why we're not in the same, exact same process. Well, you know the United Citizens case, so you don't have to do that. And it's perfectly clear the situation will repeat itself because they say they're going to do it. You say you have these regulations, you'll enforce. The real problem is you've got them in an odd situation where it's hard for us to give any relief. And this seems to be basically unfair. The IRS should not hold somebody in a position in which no relief can be given by a court. So unless you promise not to enforce these regulations, we're confronted with an inequitable government agency to tell us why this is fair for the IRS to threaten their freedom of speech but say there's no remedy. They will always be caught the way you caught them this time. Well, Judge Noonan, I think you've got a point there. Yeah. And what's the answer? I want you to give an answer. The government's got to dig its way out. Well, you know, we'll give it a go right now. I'd say that, you know, based we want a 4962 safe harbor. I think that that's a reasonable thing. And when you have a situation where the taxpayer does not act willfully and flagrantly and, in fact, pursues with the IRS a course where they corrected the problem. They, in fact, in 2006, volunteered. We're going to create this 501c4 so it doesn't come up again. Actually, I think that the IRS here acted completely reasonably. And before the filing of the suit, as Judge Wardlaw pointed out, sent them a letter and said, okay, you know what? You fit under 4962. We're abating and we're refunding. I think that the IRS actually acted reasonably here. You did act reasonably, but they said that you were legally wrong in imposing the refund. And the way you gave it back to them, I don't want to get caught up in these words, but the way you gave them back the money essentially leaves you free to argue that if they did the same thing again, they would be subject to penalties. So it's capable of repetition. Now, whether it would evade review, that's a separate question. Well, and I think that that question is a good one to think about because each tax year and each tax liability forms a distinct unit. And in that future tax year, they would have a chance to say, hey, we're doing the same thing and we'd like review. And, you know, I don't think that the 4962 exception will go on in perpetuity, nipping this in the bud. And I don't think that either party really wants that. In other words, what you're saying is that you, the IRS, would be engaging in bad faith and won't do it again. That is, won't say we're giving you back the money because you're acting, in order to moot the case, by saying that you're acting in good faith because they couldn't possibly be acting in good faith having once been warned. Well, I'd say, you know, I'm hesitant to characterize future IRS action as good faith or bad faith, but it seems to be more likely than not if they were looking at the very specific fact and instances and the exact same thing comes up, that it might be outside that box. But I think that we have to remember that this is a case of mootness. What relief can be granted here? And here the refund was given, so that part of it is gone. And then the remaining claims are claims for declaratory relief. And Congress has explicitly removed that, with the tacit exception to the Declaratory Judgment Act. Those claims for declaratory relief are not available to Catholic answer. Isn't that sort of troublesome in this particular context? Essentially, assuming you were wrong and they were right, and they want to continue to do it again, and there is this chilling effect that the possibility that they could be subject to penalty, and yet they have no remedy. Is the Declaratory Judgment Act unconstitutional to the extent that it precludes them from getting this freedom from what amounts to a restraint on their freedom of speech? I think that the constitutionality of the Declaratory Judgment Act is pretty well established. Oh, it is. I'm not suggesting that it's not unconstitutional. Are they without a remedy when their First Amendment rights are being chilled, assuming that they are? Are they basically without a remedy because the agency of the United States that's chilling their rights happens to be the Eternal Revenue Service, and the way their rights are being chilled is by virtue of their tax exemption? I'd like to answer that in two ways. The first way is by saying the rights as to declaratory relief have been removed. In a certain sense, yes, but that's been the decision by Congress. Secondly, I actually would like to take a step back. I know that you've been using the chill language. I guess my concern with that is the same concern that Judge Wardlaw mentioned. This is the same consideration that every 501c3 organization has to make. I know they have to be careful, but here they did something. The IRS said that deprives you of your tax exemption. So now we know it's not just any 501c that has to be sure and take steps to make certain that it's not violating the law. But here you've told them that they violated the law. They disagree with you, and in the future, because of the legal position that you've taken and not abandoned, they say, hey, we're worried that we're going to be penalized by the IRS. I think that that's fair, Judge Horman, but I'm just not sure that the, you know, offhand remark by this Court in Church of Scientology doesn't seem to be on all fours here. And, again, it's not really under the capable of repetition evading review because it's so fact specific, and the collateral consequence of maybe having to be a little more careful than other 501c3s, I'm not sure justifies an exception to the movement's doctrine. Well, Mr. Odom, you know, you've got the law pretty well on your side, but you leave us with a sense of unease that the government can continue to do this. And I would think it's the kind of case you might want to go back and talk to other people dealing with charitable agencies and the IRS and see if that's really the way you want to do it. It just doesn't smell very well for the government to have this hold. It does have an effect on the free speech of this particular group. Now, as you point out, they could do it another way. United Citizens says they don't have to do it another way. And it's a very peculiar case. It's a difficult case. But I would hope that it's not beyond the discretion. I really think you have a lot more discretion than it may not have. We have two agencies that are not famous for exercising discretion, but I think your agency does a good deal better than the Immigration Service. I'll accept the thanks of the IRS for that. Do you think you want to go back and perhaps mediate it or talk about it? Well, Judge, I think that there's definitely a lot of discussion. Of course, this is such a tricky area. And this case is a very weird case because of the jurisdictional posture, which doesn't really offer much relief. But I agree, the merits are a little bit weird. I mean, the facts and circumstances test is a terribly vague test. It sort of leaves everything at your discretion. You know, it's a tough test, but it's one of those things where it's kind of like the definition of pornography. I mean, with the political question, you do need to be able to sort this out. You want some discretion. Yeah, exactly. And I think the courts will see that. But then when you get a case like this where you can really hold them over a barrel time and time again, I see no way that the same thing could happen the next time and the next time. Well, hopefully. If you enter the stipulation, we'll never do this to you again. I'm not sure the agency would be so happy about it. Maybe they should do it to them again. I mean, you know, what they really want is an answer to the question of whether this kind of booklet and this kind of e-mail produced by a religious organization in the context of a political election crosses the line in the 501c3 context. They want an answer to that question. And you've given them an answer, and they want to take that to the courts. And is there any other way they can take that to the courts? You know, I think that the only way is through a refund suit or through the tax court. That's another potential way to do that. What about advice? Does the IRS issue advisory opinions like the SEC? Sure. They issue a couple of different things. One called a technical advice memo. Another, sometimes they issue revenue rulings or revenue procedures which basically say, this is how we're going to treat X, Y, or Z situation. But usually those are initiated by a number of questions, and then the IRS realizing, okay, we want to advise the taxpayer and let them know, you know, this is how we're going to treat it in the future. You said they had some relief through the tax court. What would the tax court be able to do that we can't? Oh, no, I just meant there are always two ways to challenge an action of the IRS. You can either pay the refund or you can receive a notice of deficiency. And so it just depends on whether you go the refund route or through the tax court. So that was, yeah, it was no substantive point. So you would not be willing to sit down with them and see if you could negotiate something? You know, we're always willing to talk to folks, but I'm not sure that the relief that they seek is anything except, this will be allowed in the future or this won't be allowed in the future in a bright-line test, which, quite frankly, I'm not sure is what this refund suit allows or what the Declaratory Judgment Act allows. If there are no further questions, we ask that you affirm the district warrant. All right. Thank you, counsel. Wait. You were over your time. All right. Thank you. The case of Cattlegansers v. United States will be submitted.
judges: Korman, Noonan, Wardlaw